**John W. TRIPLETTE, Appellant,**

**v.**

**Anthony J. PRINCIPI, Acting Secretary of Veterans Affairs, Appellee.**

**No. 90–1394.**

United States Court of Veterans Appeals.

Jan. 13, 1993.

John W. Triplette, pro se.

Robert E. Coy, Acting Gen. Counsel, Barry M. Tapp, Asst. Gen. Counsel, Thomas A. McLaughlin, Deputy Asst. Gen. Counsel, and Jacqueline M. Sims, were on the brief, for appellee.

Before FARLEY, MANKIN and STEINBERG, Associate Judges.

MANKIN, Associate Judge:

On October 21, 1992, the Court issued an opinion in this case which vacated and remanded the August 8, 1990, decision of the Board of Veterans' Appeals (BVA or Board). On November 20, 1992, the Acting Secretary of Veterans Affairs (Secretary) filed a motion to modify the October 21, 1992, opinion and to stay further proceedings. The Secretary asserts that on remand the Department of Veterans Affairs (formerly Veterans' Administration) (VA) was directed to determine whether the veteran is entitled to a total disability rating for pension purposes and to apply 38 U.S.C. § 5102 (formerly § 3002) and 38 C.F.R. § 4.17(b) (1991). The Acting Secretary contends that on September 11, 1980, a rating action awarded veteran a permanent and total disability rating for pension purposes, and that his pension eligibility has not been terminated. The Court grants the Acting Secretary's motion for modification of the October 21, 1992, opinion in this case, and issues this opinion in its stead. We deny the motion for a stay of proceedings as moot.

The veteran, John W. Triplette, appeals from an August 8, 1990, BVA decision which denied entitlement to service connection for a psychiatric disability. The Court has jurisdiction pursuant to 38 U.S.C. § 7252(a) (formerly § 4052(a)). The Secretary filed a motion for summary affirmance; the Court denied the motion on December 19, 1991, and ordered that both parties submit supplemental memoranda regarding hospital records prior to 1972. The proceedings were stayed pending a thorough search of such records by the Secretary. The Court vacates the BVA decision and remands appellant's claim for proceedings consistent with this opinion.

## I. FACTUAL BACKGROUND

John W. Triplette served on active duty in the U.S. Army in Vietnam from May 1968 to December 1969. The entrance medical examination was unremarkable. Service medical records did not indicate any psychiatric problems, and the separation

examination did not reveal any significant abnormalities.

On August 21, 1972, the veteran filed his first application for compensation or pension with the VA for a nervous condition. He was hospitalized at the VA hospital in Chillicothe, Ohio, for schizophrenia, paranoid type, from August 1972 to September 1972. A 1972 medical record from the VA hospital in Chillicothe noted that he had felt bad for the past year and had had some difficulty while in service. On November 7, 1972, the VA Regional Office (RO) in Huntington, West Virginia, denied service connection for schizophrenia, paranoid type, but granted a 30% non-service-connected disability rating. A pension was not awarded on the ground that the veteran's disability was not severe enough to prevent him from following substantially gainful employment.

The veteran attempted to reopen his claim on August 1, 1973. He was rehospitalized for schizophrenia, chronic, undifferentiated type at the VA hospital in Chillicothe from November 26, 1973, to January 11, 1974. In 1974, the veteran received outpatient treatment at the Mental Hygiene Clinic. A confirmed rating decision was issued on March 15, 1974. The veteran perfected his appeal to the BVA on February 18, 1975. On June 12, 1975, the BVA denied entitlement to service connection for a psychiatric disorder.

The veteran was hospitalized for anxiety neurosis in August 1975. The veteran received outpatient follow-up treatment at the VA hospital in Huntington, West Virginia, in August and October 1975, but because he failed to show up for a rescheduled appointment in December, the VA terminated his treatment in January 1976. A confirmed rating decision was issued on February 11, 1976.

In 1976, the veteran underwent a series of treatments, including chemotherapy, at the Community Mental Health Center in Huntington for schizophrenia, paranoid type. A January 31, 1977, rating decision found that this evidence was not new and material evidence so as to reopen the veteran's claim. Community Mental Health Center records from November 1978 show that the veteran was doing quite well with no recurrence of psychotic symptomatology. His mental status was stable, and the medications were continued.

The veteran was examined by the VA in January 1979. The diagnosis on January 18, 1979, was "Schizophrenia, paranoid type, by his file, and partial remission. Competent for VA pension purposes." His social adjustment was fair and his industrial adjustment indicated moderate impairment. The rating decision of February 7, 1979, denied a permanent and total disability pension and evaluated the veteran's condition as a non-service-connected disability for schizophrenia, paranoid type at 30% disabling.

A December 31, 1979, VA medical report stated that the veteran apparently suffered from seizures as a reaction to the medications that were prescribed for him. The veteran's father and brother took him to the VA Medical Center (VAMC) on March 11, 1980, because he had "been withdrawn and [had] been lying on the bed, staring out window & not talking." The veteran ran out of the admitting room and bumped into several doors, resulting in his being returned by a security guard. The family requested that the veteran be given some kind of medication, since he had not been given any since February 1980. They also noted that the veteran had lost 30 pounds in the past year. He was again seen at the VAMC on March 17, 1980, by the Chief of Psychiatry, who gave the diagnosis of acute schizophrenic episode and recommended that the veteran be admitted to the facility as soon as possible. He was admitted into the Chillicothe VAMC on March 25, 1980. He continued to get a swollen throat and tongue from an adverse reaction to the medications and suffered increased anxiety, and was seen on April 2 and 23, 1980, and on May 23, 1980. Some improvement was seen on June 23, 1980, and on August 15, 1980. A September 11, 1980, rating decision awarded the veteran a non-service-connected disability rating of 70% for schizophrenia, paranoid type, and established veteran's permanent and total dis-

ability rating for pension purposes, effective from March 11, 1980.

On March 12, 1983, the veteran was examined by a psychologist and psychiatrist at the request of the VA. The diagnostic impression was "schizophrenia, paranoid type, competent, currently treated by medication and in almost total remission, except that he is non-productive and still withdrawn. He probably would become psychotic if he stopped taking medication." The doctors concluded that they could

> find no evidence that Mr. Triplette's condition was [s]ervice-connected. He seems to have adjusted better in the Army up until the time he was discharged and confronted with the stress of living as an adult and taking on adult responsibilities. Prior to being drafted in the Army, he lived in a very isolated, protected rural environment. One of the reasons that he appears to be improved is that he has returned to a very nonstressful, protected environment and his parents and family provide and take care of everything for him.

Based on that examination, the rating board continued his non-service-connected pension on March 24, 1983.

The veteran was reexamined by the same two physicians on March 1, 1985. The diagnosis was: "Schizophrenia, Paranoid type, chronic ..., under control only by taking psychotic medication.... In my opinion, he is not competent to handle any gainful employment nor should he participate in any program for VA rehabilitation." He was readmitted into the Chillicothe VAMC from December 8, 1985, to December 20, 1985, and discharged with an aftercare plan.

On August 8, 1989, the veteran again applied for compensation or pension benefits for psychosis that allegedly began in 1969 and for which he was treated on July 9, 1969, in the "71st Trans. Army dispensary" at the U.S. Army Depot in Long Binh, Vietnam. The VA responded on August 25, 1989, by reminding the veteran that the BVA had denied his claim for service connection in 1975 and recommending that he submit new and material evidence not previously considered in order to reopen his claim. On August 26, 1989, the veteran gave the VA permission to obtain his medical records from the Community Mental Health Center in Huntington, West Virginia, the Chillicothe VAMC, and the VAMC in Huntington, West Virginia. Medical treatment records and a psychiatric treatment plan from February 10, 1986, to July 18, 1988, were submitted to show treatment for schizophrenia. On December 13, 1989, the VARO found no reason to change the prior denial of service connection for schizophrenia, since the veteran had no treatment until 1972.

The veteran sent his Notice of Disagreement on January 4, 1990. Apparently, on January 12, 1989, the veteran submitted in support of his claim some medical reports, dated April 29, 1976, to August 18, 1980, for treatment of schizophrenia, paranoid type, from the Community Mental Health Center in Huntington, and the results of intelligence testing conducted in 1977, but a January 18, 1989, rating decision confirmed the denial of service connection. The February 2, 1990, Statement of the Case stated the following reasons for the decision:

> The additional evidence that you have submitted [since the last BVA decision of 6/12/75] does not show that you received treatment for a nervous condition while in the military service nor does the evidence show that you developed a psychosis within one year of the date of your discharge from the military service.

He filed his appeal to the BVA on February 6, 1990. The August 8, 1990, BVA decision found that the "[e]vidence received subsequent to the June 1975 Board of Veterans [sic] Appeals decision is new and material, but does not alter the basis upon which it was predicated." *John W. Triplette*, BVA 90–27272, at 5 (Aug. 8, 1990). The veteran perfected his appeal to this Court.

## II. ANALYSIS

### A.

On June 12, 1975, the BVA denied service connection for a psychiatric disorder. That decision became a final decision and is

not subject to review by this Court. 38 U.S.C. § 7104 (formerly § 4004). The exception to the rule of finality is 38 U.S.C. § 5108 (formerly § 3008) which states:

If new and material evidence is presented or secured with respect to a claim which has been disallowed, the Secretary shall reopen the claim and review the former disposition of the claim.

 When a veteran attempts to reopen a previously and finally denied claim based upon new evidence, "the BVA must perform a two-step analysis." *Manio v. Derwinski*, 1 Vet.App. 140, 145 (1991).

First, the BVA must determine whether the evidence is "new and material". 38 U.S.C. [§ 5108]. Second, if the BVA determines that the claimant has produced new and material evidence, the case is reopened and the BVA must evaluate the merits of the veteran's claim in light of *all* the evidence, both new and old.

*Id.* The determination whether evidence is "new and material" is a conclusion of law which the Court reviews de novo under 38 U.S.C. § 7261(a)(1) (formerly § 4061). *See Masors v. Derwinski*, 2 Vet.App. 181, 185 (1992); *Garland v. Derwinski*, 1 Vet.App. 250, 251 (1991); *Colvin v. Derwinski*, 1 Vet.App. 171, 174 (1991). New evidence is "evidence which is not ... merely cumulative of other evidence on the record." *Colvin*, 1 Vet.App. at 174. Material evidence is evidence that "is relevant [to] and probative of the issue at hand" and presents "a reasonable possibility that the new evidence, when viewed in the context of all the evidence, both new and old, would change the outcome." *Id.*

 Here, the BVA found that "[e]vidence received subsequent to the June 1975 Board of Veterans Appeals [sic] decision is new and material, but does not alter the basis upon which it was predicated." *Triplette*, BVA 90–27272, at 5. While the Court agrees with the BVA's determination that the veteran submitted new and material evidence sufficient to reopen his claim (specifically his statement that he was treated on July 9, 1969, for "psychosis" in service in Vietnam, the credibility of which must be presumed for purposes of determining its materiality under *Manio* and *Colvin, supra; see Justus v. Principi*, 3 Vet.App. 510 (1992)), the Court finds that the BVA failed to provide adequate "reasons or bases" for its determination that the evidence did not alter the basis upon which the 1975 BVA decision was predicated. 38 U.S.C. § 7104(d)(1) (formerly § 4004(d)(1)); *Gilbert v. Derwinski*, 1 Vet. App. 49 (1990). "A bare conclusory statement, without both supporting analysis and explanation, is neither helpful to the veteran, nor 'clear enough to permit effective judicial review', nor in compliance with statutory requirements." *Gilbert*, 1 Vet. App. at 57.

 Here, the BVA decision failed to include an analysis of the credibility or probative value of the evidence submitted by or on behalf of the veteran in support of his claim, such as the veteran's August 1989 statement that he was treated for psychosis that began in 1969 and for which he was treated on July 9, 1969, in the "71st Trans. Army dispensary" at the U.S. Army Depot in Long Binh, Vietnam. (In his response to the Court's December 19, 1991, order, appellant again claimed that he was hospitalized and received treatment in Vietnam on July 9, 1969.) The veteran's statement is pertinent to his claim of service connection. The regulations regarding service connection do not require that a veteran must establish service connection through medical records alone. *See Cartright v. Derwinski*, 2 Vet.App. 24, 25 (1991). The Court holds that a determination as to the credibility or probative value of the veteran's evidence is needed here, and therefore remands the case to the BVA for that purpose. *See Wilson v. Derwinski*, 2 Vet.App. 16, 20 (1991); *Smith v. Derwinski*, 1 Vet.App. 235, 237–38 (1991).

**B.**

 The BVA "must review all issues which are reasonably raised from a liberal reading of the appellant's substantive appeal." *Azurin v. Derwinski*, 2 Vet.App. 489, 492 (1992); *Mingo v. Derwinski*, 2 Vet.App. 51, 54 (1992) (citing *Myers v. Derwinski*, 1 Vet.App. 127, 129 (1991)). The

VA's statutory "duty to assist" the veteran under 38 U.S.C. § 5107(a) to develop the facts pertinent to his claim must extend the liberal reading given to a veteran's substantive appeal "to include issues raised in all documents or oral testimony submitted prior to the BVA decision." *EF v. Derwinski,* 1 Vet.App. 324, 326 (1991).

Schizophrenia is a psychotic disorder and is considered a "chronic disease" for purposes of establishing service-connected VA benefits within the statutory presumption period. 38 U.S.C. § 1101 (formerly § 301); 38 C.F.R. § 4.132 (1991). In the case of any veteran who served for ninety days or more during a period of war, service connection for chronic, paranoid, schizophrenia can be established by proving that it became "manifest to a degree of 10 percent or more within one year from the date of separation from such service." 38 U.S.C. § 1112 (formerly § 312). There is evidence that the veteran may have been treated for a psychotic disorder during service in 1969. If, however, the veteran's schizophrenia did not manifest itself within the statutory presumption period, he may also establish service connection by submitting direct evidence under 38 C.F.R. § 3.303(d) (1991).

Even though the evidence does not show hospitalization for schizophrenia until 1972, the veteran and his family have consistently contended that he has had the symptomatology since 1969. The BVA decision apparently denied appellant's claim because there was no record of his hospitalization for schizophrenia until 1972, after the statutory presumption period, but it failed to consider whether the veteran had established direct service connection. Therefore, appellant's claim must be remanded for consideration of whether he has established direct service connection and for consideration of the applicability of 38 U.S.C. § 1154(b) (formerly § 354(b)) (veteran who engaged in combat with the enemy may show service connection by lay evidence, even though there is no official record of service incurrence, if consistent with circumstances of service). *See* 38 C.F.R. § 3.303(d) (1991).

## III. CONCLUSION

Because the Court finds that the BVA's discussion and evaluation are inadequate, we are compelled to overturn the Board's decision and remand this case for: (1) a complete analysis of the credibility or probative value of evidence, both new and old, submitted by or on behalf of the veteran in support of his claim; (2) a determination as to whether the veteran has established direct service connection under 38 C.F.R. § 3.303(d) and for consideration of the applicability of 38 U.S.C. § 1154(b); (3) if the BVA finds that these provisions are not applicable, inclusion of sufficient "reasons or bases" explaining such determination; and (4) consideration of the application of the benefit of the doubt doctrine of 38 U.S.C. § 5107(b) (formerly § 3007(b)) during the adjudication process.

The August 8, 1990, BVA decision is vacated, and appellant's claim is remanded for proceedings consistent with this Court's opinion.