# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 99-270

Charlie Sanders, Appellant,

v.

Togo D. West, Jr.,
Secretary of Veterans Affairs, Appellee.

On Appeal from the Board of Veterans' Appeals

(Decided  May 9, 2000   )

*Ronald L. Smith*, of Washington, D.C., was on the brief for the appellant.

*Leigh A. Bradley*, General Counsel; *Ron Garvin*, Assistant General Counsel; *Joan E. Moriarty*, Deputy Assistant General Counsel; and *Patricia Trujillo*, of Washington, D.C., were on the brief for the appellee.

Before KRAMER, HOLDAWAY, and IVERS, *Judges*.

HOLDAWAY, *Judge*:  The appellant, Charlie Sanders, appeals an October 1998  decision of the Board of Veterans' Appeals (BVA or Board) which determined (1) that the appellant was not entitled to a disability rating in excess of 10% for his foot disability; (2) that the rating criteria under 38 C.F.R. § 4.73, Diagnostic Code (DC) 5310, muscle injuries, Group X, used to rate the appellant's foot injury were not appropriate and changed the standard to 38 C.F.R. § 4.71a, DC 5280-81, severe unilateral hallux rigidus; and (3) that secondary service connection for a left knee disorder was not warranted.  Both parties have filed briefs.  The Court has jurisdiction of the case under 38 U.S.C. § 7252(a).  For the following reasons, the Court will affirm the Board's decision in part, vacate the Board's decision in part, and remand a matter for readjudication.

## I. FACTS

The appellant served on active duty in the U.S. Army from May 1967 to May 1970. During combat action, he sustained a through-and-through gunshot wound to his left foot. In June 1970, a VA regional office (VARO) granted the appellant service connection and a 10% disability rating for the injury to his left foot under 38 C.F.R. § 4.73, Diagnostic Code (DC) 5310. The VARO reported that the through-and-through injury was in the area of the first metatarsal and that the appellant had reported to sick call several times reporting pain in his left foot. X-ray examination of the appellant's left foot in May 1969 was unremarkable.

A November 1983 medical examination of the appellant's left foot revealed that he had residual scars of the wound with some weakness of the great toe on resisting dorsiflexion and plantar flexion. There was no evidence of apparent tissue loss. In December 1986, the appellant dropped a filing cabinet on his left foot. Medical examination indicated that he had superficial abrasions over his left shin and left great toe.

In October 1993, the appellant was diagnosed with cellulitis of the left foot and tender joints of the left foot with some flexion deformity. A subsequent evaluation of his left foot revealed that he had painful range of motion in his left first toe. He was diagnosed with "hallux limitus/rigidus."

The appellant filed an application in May 1994 for an increased disability rating for his left foot. An April 1994 VA examination noted that the appellant continued to have painful range of motion in his toe and diagnosed him with hallux limitus. The VARO denied his claim for an increased disability rating for his foot disability because the medical evidence did not demonstrate residual severe muscle disability. A November 1994 VA consultation report for physical therapy indicated that the appellant had been diagnosed with traumatic arthritis of the left hallux with painful range of motion, edema, and a mild limp. The appellant continued in physical therapy. A February 1995 progress note indicated that he had left hallux rigidus and infection in the left first metatarsal phalangeal joint.

A November 1995 VARO rating decision indicated that the veteran was not entitled to an increased rating because there was no evidence of severe muscle disability. The appellant filed a timely Notice of Disagreement with the VARO's decision. Subsequent VA medical records confirmed that the appellant had ankylosis and degenerative joint disease of the left

metatarsophalangeal joint. Several doctors recommended that the appellant undergo surgery to correct the pain. In June 1996, the VARO confirmed its decision to deny the appellant an increased disability rating.

In August 1997, the BVA remanded the matter to the VARO for readjudication because there had been changes in the VA rating schedule regarding the criteria for evaluating muscle injuries. The BVA ordered the VARO to obtain a medical opinion describing the muscles injured by the appellant's in-service foot injury and the extent of the residual disability. In October 1997, the appellant underwent a VA orthopedic evaluation. The appellant was diagnosed with "hallux rigidus and gun shot wound through and through [first] metatarsal." In a March 1998 VA examination, the physician noted that there were no muscle injuries and that the injury "was strictly skin and bone." He also noted that both the flexor and extensor tendons were not severed. The physician diagnosed the appellant with a "through and through gunshot wound of the first metatarsal without muscle damage, without deformity" and "osteoarthritis of the first metatarsal phalangeal joint (open hallux rigidus)."

On appeal to the Board, the BVA determined that DC 5310 for muscle injuries was not the appropriate DC, and changed the evaluation criteria to 38 C.F.R. § 4.71(a), DCs 5280-81. The Board found that the most recent VA medical examination demonstrated that there had been no muscle injury to the appellant's foot to evaluate the injury under DC 5310. The Board also found that the appellant was not entitled to a disability rating greater than 10% under DC 5280-81.

## II. ANALYSIS

### A. Left Knee

In his brief, the appellant challenges only the Board's decision with respect to the left foot disability. Therefore, the appellant is deemed to have abandoned the issue of secondary service connection for a knee disability that was included in the Board's decision. *See Bucklinger v. Brown*, 5 Vet.App. 435 (1993).

### B. Left Foot

Under 38 U.S.C. § 7104(d), "Each decision of the Board shall include a written statement of the Board's findings and conclusions, and the reasons or bases for those findings and conclusions,

3

on all material issues of fact and law presented on the record."  As this Court has previously explained:

> If the administrative action is to be tested by the basis upon which it purports to rest, that basis must be set forth with such clarity as to be understandable.  It will not do for a court to be compelled to guess at the theory underlying the agency's action; nor can a court be expected to chisel that which must be precise from what the agency has left vague and indecisive.

*Gilbert v. Derwinski*, 1 Vet.App. 49, 56-57 (1990) (quoting *SEC v. Chenery*, 332 U.S. 194, 196-97 (1947)).

In this case, the Court is uncertain as to the precise theory underlying the Board's action. What the Board did is clear: it changed the diagnostic code which it used to rate the appellant's service-connected injury.  Previously, the appellant had been rated under 38 C.F.R. § 4.73, DC 5310 which provides disability ratings for muscles of the foot.  The Board changed the standard to 38 C.F.R. § 4.71a, DCs 5280-5281, which provides disability ratings for bone or joint disabilities of the foot.  The Board found that DCs 5280-5281 were the more appropriate disability ratings because "[t]hroughout the history of the veteran's treatment for complaints related to residuals of the gunshot wound of the foot, the related disabilities have been assessed as being related to the bone and joint involved, not the muscles of the veteran's foot or toe."  The Board further noted that "the VA examination report of March 1997 made clear that the veteran's condition did not involve injury to either muscles, tendons[,] or ligaments."

In his brief, the appellant argues that the Board's action was unlawful because it violated the restrictions on disability ratings set forth by 38 U.S.C. § 110.  This section prohibits reduction in rating for any "disability which has been continuously rated . . . for twenty or more years."  38 U.S.C. § 110.  Since the rating for his foot muscle disability had continued unchanged for more than twenty years, the appellant argues that the Board discontinued this rating contrary to the provisions of 38 U.S.C. § 110.  The appellant asserts, therefore, that he is entitled to compensation under both DCs 5280-5281 and DC 5310.

However, the Court's review of the Board's decision is frustrated by the inadequate reasons for its decision.  As to whether the Board discontinued a protected rating contrary to 38 U.S.C. § 110 or 38 U.S.C. § 1159 while simultaneously granting service connection for a different injury, in which

4

event the appellant may be entitled to be rated under both DCs 5280-5281 and DC 5310 as he argues, the Board should include a discussion of the issue of severance and why the change in the disability rating code is not, at a minimum, analogous to severance. *See also Esteban v. Brown*, 6 Vet.App. 259, 261-62 (1994) (veteran entitled to separate ratings where none of the symptomatology for any one condition duplicates, or overlaps others). A second possible scenario is that the Board may have merely modified the appellant's disability rating pursuant to the Court's decision in *Gifford v. Brown*, 6 Vet.App. 269 (1994), to conform to the evidence that shows a disability to the left great toe but no disability to the muscles of the left foot. In *Gifford*, the Board modified the appellant's disability rating from a left thigh disability to a right thigh disability. The appellant in *Gifford*, similar to the appellant here, argued that he was entitled to disability ratings for both thighs. The Court held that the "only essential feature of the initial rating, and the part of the rating that was protected, was *a* disability stemming from *a* gunshot wound to *a* thigh." *Id.* at 271. A third possible scenario is that the Board did not want to award the appellant duplicate disability ratings for the same symptomatology. *See* 38 C.F.R. § 4.14; *see also Gifford*, 6 Vet.App. at 272 ("Unlike severance, limiting appellant here to a single 10% disability where he is service connected for both thighs is not precluded by our statutes, and is supported by case law and regulation.") (Kramer, J., concurring).

As the Court described in *Gilbert*, when the reasons for the Board's decision are unclear, the Court will not guess at the theory underlying the Board's action. Thus, the appropriate remedy is for the Court to remand the matter to the Board to clarify its decision. In this regard, the Court notes that the critical issue for the Board to address, with regard to the above scenarios, is whether the appellant's disability is systemic, i.e., muscular or skeletal, or rather only functional, and if so, what is the precise nature of the functional loss common to any rating code that may be utilized. As always, the appellant will be free on remand to the Board to submit additional evidence or argument in support of his position, including his interpretation of the relevance of *Gifford* or 38 C.F.R. § 4.14, if he so chooses. *See Kutscherousky v. West*, 12 Vet.App. 369 (1999).

### III. CONCLUSION

The Court finds that the Board's decision on the issue of an increased disability rating for the appellant's left foot condition is inadequate for appellate review. Therefore, the Board's decision as

to that matter is VACATED and the matter is REMANDED for readjudication.  The Board's decision regarding service connection of his left knee claim is AFFIRMED.