MEMORANDUM DECISION
STEINBERG, Associate Judge:
The pro se appellant, World War II era veteran Richard H. Stozek, appeals from the December 18, 1990, decision of the Board of Veterans’ Appeals (BVA or Board) denying his reopened claims for entitlement to service connection for bilateral hammertoe deformities and a back disorder. Richard H. Stozek, BVA 90-45422 (Dec. 18, 1990). The Secretary of Veterans Affairs (Secretary) has filed a motion for summary affirmance. Summary disposition is appropriate here because the case is one “of relative simplicity” and the outcome is controlled by the Court’s precedents and is “not reasonably debatable”. Frankel v. Derwinski, 1 Vet.App. 23, 25-26 (1990). For the reasons set forth below, the Secretary’s motion will be denied and the Board’s decision will be vacated and the matter remanded for readjudication of both claims.
I. BACKGROUND
The veteran served on active duty in the United States Army from May 1946 to March 1947. R. at 37. His service records are missing and presumed destroyed by a 1973 fire at the National Personnel Record Center. R. at 12, 27, 37. In June 1982, the veteran filed a claim for service-connected disability compensation for hammertoes, tendon damage, and painful bunions. R. at 4. In November 1982, he amended that claim to include compensation for an allegedly service-connected back disability. R. at 17. He submitted letters from four physicians who stated that they had treated him for a back condition in 1964 and 1971-72, as well as evidence indicating that his personal physician’s records had been destroyed in 1972. R. at 20-25. In January 1983, the veteran submitted statements from six lay witnesses, all of whom stated that he had been in good physical condition prior to service but at discharge had been suffering from back and foot disabilities. R. at 30-35. A June 1983 Veterans’ Administration (now Department of Veterans Affairs) (VA) physical examination report resulted in diagnoses of hammertoes and “chronic back pain, possibly secondary to herniated nucleus pulposus, with chronic and recurrent symptoms”. R. at 11. According to that report, the veteran related the onset of his hammertoes to the Army’s issuing to him “ ‘shoes that were too tight’ ”, and stated that he had incurred the sudden onset of lower back pain in the Army after lifting his duffel bag. R. at 10. The veteran’s claim was denied by the Board in November 1984. R. at 71-76.
In December 1985, the veteran sought to reopen his claim, submitting statements from two service comrades, George Fisher- *459 ing and Raymund [sic] Pease. Mr. Pease stated that he recalled the veteran’s “having experienced problems with his back, legs, and feet” during service, adding: “[H]e was hospitalized for medical treatment relating to the aforementioned [back] problem inasmuch as I recall visiting him in the hospital on one occasion.” R. at 79. Mr. Fishering stated that during their service at Fort Belvoir, Virginia, the veteran had been hospitalized “on three occasions for his back injury.” R. at 78. In November 1987, Mr. Fishering and Mr. Pease each submitted an additional statement; Mr. Fishering reported that when he had visited the veteran in the Fort Belvoir hospital in 1946 the veteran “was secured to the bed by a traction devise [sic] and unable to sit up or leave the bed.” (R. at 91), and Mr. Pease stated that when he had visited the veteran during his in-service hospitalization “he was immobile ... and seemed to have been in traction at that time to relieve the back pain he was experiencing” (R. at 90). In a September 1988 hearing before the BVA, the veteran testified under oath that the shoes he had been issued upon induction were too small and had deformed his feet, causing him continuous pain and ultimately requiring corrective surgery at a VA medical center in November 1982. Supp.R. at 2-5, R. at 18. In addition, he testified that he had injured his back on the first day of service when, while lifting a heavy duffel bag, he caught his foot on a fellow soldier’s duffel bag and fell to the ground, landing on his back. Supp.R. at 6, 15. He testified further that two days after the accident he had been placed in traction for five days at Fort Belvoir’s infirmary, that he had again been admitted to the infirmary at a later, unspecified, date for approximately one week, and that he had been visited by Messrs. Fishering and Pease during this second hospitalization. Supp.R. at 7-8. In a November 1988 decision denying the veteran’s claims, the Board found that the evidence submitted subsequent to the Board’s November 1984 decision was “not sufficient to alter the factual basis” of that decision. R. at 110.
In August 1989, the veteran sought reopening of his claims for service-connected disability compensation for hammertoes and a back disorder. R. at 114. This resulted in the adverse BVA decision here on appeal.
II. ANALYSIS

A. New and Material Evidence

Pursuant to 38 U.S.C.A. § 5108 (West 1991), the Secretary must reopen a previously and finally disallowed claim when “new and material evidence” is presented or secured with respect to that claim. See 38 U.S.C.A. § 7104(b) (West 1991). In considering claims to reopen previously and finally disallowed claims, the Board must first determine whether the evidence presented or secured since the prior final disallowance of the claim is “new and material”. Manio v. Derwinski, 1 Vet.App. 140, 145 (1991). Evidence is “new” if it is not “merely cumulative” of evidence already in the record; it is “material” if it is “relevant [to] and probative of the issue at hand” and there is a “reasonable possibility that the new evidence, when viewed in the context of all the evidence, both new and old, would change the outcome.” Colvin v. Derwinski, 1 Vet.App. 171, 174 (1991). The determination as to whether evidence is “new and material” is a question of law which this Court reviews de novo under 38 U.S.C.A. § 7261(a)(1) (West 1991). See Masors v. Derwinski, 2 Vet.App. 181, 185 (1992); Jones (McArthur) v. Derwinski, 1 Vet.App. 210, 213 (1991); Colvin, supra.
It is unclear whether the Board found the evidence not new and material and thus did not reopen the claims or whether it reopened the claims and denied them on the merits. The Board concluded as a matter of law that the evidence received since its November 1988 decision “does not establish a new factual basis” showing that the veteran’s disabilities were incurred in or aggravated during service. Stozek, BVA 90-45422, at 7. For the reasons set forth below, the Court holds that the veteran did submit “new and material” evidence to reopen both claims.
*460 Specifically, the veteran submitted copies of service sick call reports and morning reports indicating that in May, September, and October 1946 he had been hospitalized at Fort Belvoir, Virginia, after having taken sick in the line of duty. R. at 135-36, 139, 145-46, 148-48, 153, 155. Although the Board stated that “[s]ome of these records were previously on file”, nothing in the record on appeal, including the two prior BVA decisions, indicates that the sick call reports and morning reports had been previously in the record before the Board. Additionally, the veteran submitted an August 1989 statement by Harold Thompson, who stated that he had known the veteran since 1945, that prior to service the veteran “showed no signs of injury”, but that in 1947, after discharge, “I noticed his walk [and] movements had changed. Also on ocassion [sic] he was hunched [and] seemed to walk [and] move in pain. He told me his feet [and] back were giving him trouble because of what happened to him in the Army.” R. at 115. Although the record contains a January 1983 statement by Mr. Thompson, that earlier statement merely stated that he could no longer employ the veteran because of the veteran’s back, foot, and leg problems, and did not mention the veteran’s physical condition immediately after discharge. Mr. Thompson’s 1989 statement is the only evidence in the record describing the veteran’s physical condition at the time of discharge. Finally, the veteran also submitted a July 1989 statement by Eugene Sarkey, who, noting that he had known the veteran “for the last 47+ years", stated:
During his interim in service we corresponded on a regular basis. It was shortly after his induction that he informed me of an accident he had, tripping over a duffel bag, causing a back injury, and spending quite some time in the hospital. In addition, after a few weeks he began complaining about tight shoes and foot problems.
R. at 116-17. Although the record contains a January 1983 statement by Mr. Sarkey, the 1989 statement is not cumulative because no other evidence in the record documents that the veteran had, in 1947, reported that his in-service hospitalization was for a back injury sustained after tripping over a duffel bag and that he had incurred foot problems due to ill-fitting shoes.
Accordingly, the Court holds that the foregoing evidence is “new” because it is not merely cumulative of evidence previously in the record, and it is “material” because it is “relevant and probative” and there is a “reasonable possibility that the new evidence [if found credible], when viewed in the context of all the evidence, both new and old, would change the outcome.” Masors, 2 Vet.App. at 185; Godwin v. Derwinski, 1 Vet.App. 419, 424 (1991); Colvin, supra (in reaching determination about reasonable possibility of changing the outcome, benefit-of-the-doubt rule under 38 U.S.C.A. § 5107(b) is to be considered).
Because the veteran submitted new and material evidence to reopen his claims, the Board was required to review the new evidence in the context of the old, and to base its decision on consideration of “all evidence and material of record” rather than on the new evidence standing alone or in connection with only certain items of the record. Jones, 1 Vet.App. at 214-15; 38 U.S.C.A. § 7104(a) (West 1991). The Board was required to provide a statement of the reasons or bases for its findings or conclusions, including an evaluation of the evidence which it finds to be persuasive or unpersuasive. 38 U.S.C.A. § 7104(d)(1) (West 1991); see Gilbert v. Derwinski, 1 Vet.App. 49, 59 (1990); Cousino v. Derwinski, 1 Vet.App. 536, 540 (1991). Lay evidence, including a claimant’s sworn testimony, may be sufficient to place the evidence in relative equipoise and thereby establish entitlement to service connection. See Cartright v. Derwinski, 2 Vet.App. 24, 25-26 (1991); Gilbert, 1 Vet.App. at 53-56 (claimant entitled to benefit of doubt when evidence is in “relative equipoise”). The Court has held that, when, as here, an appellant’s service records are missing, “the BVA’s obligation to explain its findings and conclusions and to consider carefully the benefit-of-the-doubt rule is height *461 ened.” See Moore (Howard) v. Derwinski, 1 Vet.App. 401, 406 (1991); O’Hare v. Derwinski, 1 Vet.App. 365, 367 (1991). The Court notes that the veteran has never been provided with a satisfactory explanation by the BVA as to why his sworn testimony and the lay statements from two service comrades and seven other acquaintances is not sufficient evidence of service connection for his hammertoes and back disability, or why, under the benefit-of-the-doubt doctrine, the evidence is not in equipoise. Mere conclusory statements regarding the evaluation of the evidence, including the applicability of the benefit-of-the-doubt rule, will not suffice. Ibid.
In its decision, the Board stated: “There is not, in our view, an approximate balance of positive and negative evidence regarding the merits of the issue material to the disposition of the appeal. Rather, there is a clear preponderance of negative evidence.” Stozek, BVA 90-45422, at 7. The Board did not describe the “negative evidence” upon which it relied, and, although it said it was “especially mindful of the fact that the service medical records are missing through no fault of the veteran”, ibid., because there is no evidence in the record contradicting the appellant’s claims that he incurred hammertoes and a back disability in service the Court concludes that the Board wrongly equated the absence of medical corroboration with “negative evidence”. “Nowhere do VA regulations provide that a veteran must establish service connection through medical records alone”. Cartright, supra; see 38 C.F.R. § 3.303(a) (1992) (“determinations as to service connection will be based on review of the entire evidence of record”).

B. Clear and Unmistakable Error

The Court notes that, in his August 1989 request to reopen his claims, the veteran stated:
I believe clear and obvious error was made in BVA decision as when there is absence of evidence in record (VA says records destroyed in fire) [, and] the statements by military buddies who served with me and witnessed that while in service they visited and saw me in military hospital in traction ... should have ruled out any doubt and favorable decision should have been made in my favor.
R. at 114. The Board was required to adjudicate that claim and determine whether the 1988 BVA decision contained clear and unmistakable error requiring revision under 38 C.F.R. § 3.105(a) (1992). See Russell v. Principi, 3 Vet.App. 310, 314-15 (1992) (Board required to adjudicate claim of clear and unmistakable error in prior BVA decision’s failure to consider all the evidence); Mata v. Principi, 3 Vet.App. 558 (1992); Chisem v. Principi, 3 Vet.App. 322, 329 (1992) (where appellant reasonably raises the issue of clear and unmistakable error before the BVA, the BVA must review the issue (citing EF v. Derwinski, 1 Vet.App. 324, 326 (1991) (Board must address all issues reasonably raised to it by appellant))). On remand, the Board must adjudicate the veteran’s claim of clear and unmistakable error in the Board’s 1988 decision.
III. CONCLUSION
Upon consideration of the record and the pleadings of the parties, the Court summarily vacates the December 18, 1990, BVA decision and remands the matter to the Board for prompt readjudication and adjudication, in accordance with this decision, on the basis of all the evidence and material of record, and issuance of a new decision supported by an adequate statement of reasons or bases. See 38 U.S.C.A. § 7104(a), (d)(1) (West 1991); Gilbert, 1 Vet.App, at 56-57; Fletcher v. Derwinski, 1 Vet.App. 394, 397 (1991). In view of the unavailability of the veteran’s service medical records, in this case the Board’s duty to assist under 38 U.S.C.A. § 5107(a) (West 1991) “includes the conduct of a thorough and contemporaneous medical examination, one which takes into account the records of prior medical treatment, so that the evaluation of the claimed disability will be a fully informed one.” Green (Victor) v. Derwinski, 1 Vet.App. 121, 123-24 (1991) (quoted in Moore, supra). On remand, the appel *462 lant will be free to offer additional evidence and argument as to the reopened claims (including his contention, first raised in his informal brief to this Court, that his toe condition was aggravated, not incurred, in service) and additional argument as to the claim of clear and unmistakable error in the 1988 BVA decision. See Quarles v. Derwinski, 3 Vet.App. 129, 141 (1992). A final decision by the Board following the remand herein ordered will constitute a new decision which may be appealed, if adverse, to this Court only upon the filing of a new Notice of Appeal with the Court not later than 120 days after the date on which notice of the new final Board decision is mailed to the appellant.
VACATED AND REMANDED.